IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT HAGGERTY,<br><br>*Plaintiff,*<br><br>v.<br><br>METROPOLITAN LIFE INSURANCE COMPANY,<br><br>*Defendant.* | Civil Action No. 2:19-cv-1067<br><br>Hon. William S. Stickman IV |

## **OPINION**

WILLIAM S. STICKMAN IV, United States District Judge

This case concerns a request for long-term disability benefits under the Employee Retirement and Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461. Plaintiff, Robert Haggerty ("Haggerty"), filed his Motion for Summary Judgment (ECF No. 31), together with an accompanying Brief in Support (ECF No. 32), requesting that the Court grant summary judgment in his favor on both counts. Defendant, Metropolitan Life Insurance Co. ("MetLife"), also filed a Motion for Summary Judgment (ECF No. 33), together with an accompanying Memorandum of Law (ECF No. 43), requesting that the Court grant summary judgment in its favor on both counts. After consideration of both Motions, the Court grants MetLife's Motion for Summary Judgment (ECF No. 33) and denies Haggerty's Motion for Summary Judgment (ECF No. 31) as moot.

1

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

Before proceeding to a summary of the pertinent facts, the Court notes that many responses in Haggerty's Response to MetLife's Statement of Material Facts (ECF No. 48) fail to comply with both Federal Rule of Civil Procedure 56(e) and Local Rule 56. Federal Rule of Civil Procedure 56(e) provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . the court may . . . consider the fact undisputed for the purposes of the motion . . . ." Fed. R. Civ. P. 56(e)(2). Local Rule 56 further provides that a party's responsive statement must set forth "the basis for the denial . . . if not admitted in its entirety (as to whether it is undisputed or material), with appropriate reference to the record . . . ." LCvR 56(C)(1)(b). There are various responses in Haggerty's Response to MetLife's Statement of Material Facts (ECF No. 48), that consist of formulaic general denials or partial admissions[1] that fail to properly address the fact at issue. Thus, where a material fact comes with an irrelevant, general denial that fails to include an appropriate reference to the record distinguishing the fact at issue, that fact will be deemed admitted unless otherwise noted. *See Tressler v. Summit Twp.*, No. 17-32, 2019 WL 1900397, at *1 n.1 (W.D. Pa. Apr. 29, 2019) (collecting cases).

---

[1] A substantial portion of those general denials adheres, or inconsequentially deviates, from the following format: "Met[L]ife did not process an application for LTD benefits or receive any documents from his physicians related to such an application during the relevant period of time." (ECF No. 48, ¶ 27). This general, copy-and-pasted denial is often used to deny specific factual circumstances cited to in the record evidence and is generally irrelevant to the validity or existence of the factual circumstance at issue. From appearances, this sort of general denial is used in an attempt to reaffirm Haggerty's administrative exhaustion request for further development of what already seems to be a substantially developed record. Reaffirming that position, however, by using improper, general denials of the material circumstances at issue is improper, and to that extent, Haggerty's Response does not conform to the requirements of Federal Rule of Civil Procedure 56 or Local Rule 56.

A.     **The Employer, Claims Administrator, and Plan.**

G4S Secure Solutions (USA), Inc. ("G4S Secure") sponsors and serves as the plan administrator of an employee welfare benefit plan known as "The Group Insurance Program for Employees and Dependents of G4S Secure Solutions (USA) Inc. and Adopting Employers" ("the Plan"). The Plan provides many benefits to employees including medical, dental, vision, life insurance, accidental death and dismemberment, and disability benefits. G4S Secure funded the short-term disability benefits and was, therefore, solely responsible for paying all short-term disability benefits from the Plan assets. To that extent, MetLife did not insure any short-term disability benefits. MetLife is the claims administrator of the Plan, interpreting plan terms and possessing the discretion to determine eligibility for short-term disability benefits. MetLife issued group insurance certificates, which describe the long-term disability benefits available to employees. (ECF No. 44, ¶¶ 1–4, 6); (ECF No. 48, ¶¶ 1–4, 6).

To receive short-term disability benefits under the Plan, a claimant must, among other requirements, timely provide proof of disability and that the disability occurred while the applicant was employed. A claimant who timely submits proof of disability may receive short-term disability benefits for a period not to exceed thirteen weeks (i.e., ninety-one days). (ECF No. 44, ¶¶ 7–8): (ECF No. 48, ¶¶ 7–8). To receive long-term disability benefits under the Plan, a claimant must, among other requirements, timely provide proof of disability during and after the Elimination Period and, subsequently, that the onset of the disability occurred while the employee was still employed.[2] (ECF No. 44, ¶ 9); (ECF No. 48, ¶ 9). The Elimination Period encompasses

---

[2] Haggerty admits in part and denies in part this fact without specifying specifically what is denied or admitted. (ECF No. 48, ¶ 9). Haggerty only states, without explanation, that "[t]he policy states that the employer should have a supply of claim forms." (ECF No. 48, ¶ 9). MetLife, however, is not the employer, and Haggerty fails to elaborate on how the supply of claim forms is in any way relevant to the fact above.

3

ninety days and begins on the date of onset of the disability. A claimant is not eligible for long-term disability benefits until he or she completes the Elimination Period by showing that he or she was disabled during the Elimination Period. The short-term disability benefit period and the long-term disability benefit period overlap. The deadline for submitting notice of a claim for long-term disability benefits and proof of long-term disability is ninety days from the termination of the Elimination Period (i.e., approximately six months from the onset of the disability). If it is not "reasonably possible" for a claimant to give notice of the claim or proof within ninety days after the termination of the Elimination Period, a claimant may still submit a claim and proof of disability as long as he or she does so "as soon as is reasonably possible" after the original deadline. (ECF No. 44, ¶¶ 10–14); (ECF No. 48, ¶¶ 10–14).

  **B.**  **The Employment History and Experience of Haggerty.**

Haggerty is a college graduate with a degree in accounting (ECF No. 44, ¶ 15); (ECF No. 48, ¶ 15) and extensive experience in and knowledge of the disability and workers' compensation insurance industry. (ECF No. 44, ¶ 16); (ECF No. 48, ¶ 16). G4S Compliance & Investigations ("G4S Investigations") hired Haggerty as a Special Investigations Unit Investigator in May 2013. In that role, Haggerty conducted surveillance and gathered information on disability and workers' compensation claimants on behalf of the insurance companies and employers. (ECF No. 44, ¶ 17); (ECF No. 48, ¶ 17). G4S Investigations terminated Haggerty on August 19, 2016, and before doing so, it provided written warning to Haggerty for his repeated failure to timely submit investigation-related work product and his misuse of the company's gas credit card in violation of company policy.[3] (ECF No. 44, ¶¶ 18–19); (ECF No. 48, ¶¶ 18–19). Haggerty was also employed

---

[3] Haggerty admits in part and denies in part this fact by stating that the written warning was not "the real reason for termination . . . ." (ECF No. 48, ¶ 19). Regardless of whether Haggerty was

4

by the investigation firm Coventbridge (USA), Inc. ("Coventbridge") and later terminated. Before his termination at Coventbridge, the company issued Haggerty a final written warning concerning his failure to timely submit his investigation-related work product, unexplained gas card charges, and the submission of false investigation reports. (ECF No. 44, ¶¶ 20–21); (ECF No. 48, ¶¶ 20–21).

### C.    The Denial of Haggerty's Short-Term Disability Claim.

On September 2, 2016, Haggerty made a claim for short-term disability benefits.[4] (ECF No. 44, ¶ 23); (ECF No. 48, ¶ 23). Haggerty claimed his disability began on August 18, 2016, the day immediately preceding his termination.[5] (ECF No. 44, ¶ 24); (ECF No. 48, ¶ 24). Haggerty, however, worked on August 18, 2016, and on August 19, 2016. (ECF No. 44, ¶ 25); (ECF No. 48, ¶ 25). All of Haggerty's physicians, including his primary care physician, Dr. Heather Hanzlik ("Dr. Hanzlik"), endocrinology/diabetes physician, Dr. Patricia Bononi ("Dr. Bononi"), and immunology physician, Dr. Gene Finley ("Dr. Finley"), conveyed to MetLife that they did not tell Haggerty to cease working, and in contrast, Dr. Hanzlik reported that Haggerty could work "at full capacity" and "without restrictions." (ECF No. 44, ¶ 26); (ECF No. 48, ¶ 26). On October 5, 2016, MetLife mailed Haggerty a denial of his claim for short-term disability benefits because,

---

terminated as a direct result of the written warning, he does not dispute the occurrence or validity of the written warning.

[4] Haggerty denies this fact and states that he "called Ms. Bond on August 18, 2016 and left a voicemail." (ECF No. 48, ¶ 23). To support his statement, Haggerty cites to his declaration generally. However, his declaration does not contain reference to a phone call to Ms. Bond. (ECF No. 34-1).

[5] The parties do not specify the nature of the claimed disability. Dr. Hanzlik described it as increased stress from external factors, which resulted in, among other things, complications with Haggerty's diabetes. (ECF No. 40-3).

among other reasons, all of the treating physicians stated that they did not remove Haggerty from work, nor did they believe he was unable to work. (ECF No. 44, ¶ 27); (ECF No. 48, ¶ 27).

    D.    **The Appeal of Haggerty's Short-Term Disability Claim.**

The record shows that, before filing his appeal, Haggerty contacted Dr. Hanzlik by phone to persuade her to falsely represent to MetLife that she had expressed to Haggerty that he should stop working on August 18, 2016. (ECF No. 44, ¶¶ 28–29); (ECF No. 48, ¶¶ 28–29). On that call, Dr. Hanzlik responded by telling Haggerty that she "cannot falsify records" but that she could explain to MetLife that Haggerty could not work. (ECF No. 44, ¶ 29); (ECF No. 48, ¶ 29). Haggerty then left a voicemail message for MetLife claiming that his physician "miswrote [the] letter" and would "write a new one stating that he [could] not work." (ECF No. 44, ¶ 30); (ECF No. 48, ¶ 30). Dr. Hanzlik subsequently mailed MetLife a letter explaining her view that Haggerty could not work. (ECF No. 44, ¶ 31); (ECF No. 48, ¶ 31).

On October 11, 2016, Haggerty sent MetLife materials in support of his appeal from the denial of short-term disability benefits. (ECF No. 44, ¶ 33); (ECF No. 48, ¶ 33). The next day, Haggerty again contacted Dr. Hanzlik's office and spoke with Dr. Arenth. (ECF No. 44, ¶ 34); (ECF No. 48, ¶ 34). On that call, Haggerty requested that Dr. Hanzlik represent to MetLife that she had spoken with Haggerty on August 18, 2016 and told him to stop working on that date. (ECF No. 44, ¶ 35); (ECF No. 48, ¶ 35). Dr. Arenth responded that they were prohibited from falsifying records, and furthermore, there was no documented encounter with Haggerty on August 18, 2016. (ECF No. 44, ¶ 35); (ECF No. 48, ¶ 35). The following day, Haggerty contacted Dr. Hanzlik requesting her to make the same representations above, to which she responded that doing so would be a "falsification of records" and may amount to "insurance fraud." (ECF No. 44, ¶ 37); (ECF

6

No. 48, ¶ 37). Haggerty told Dr. Hanzlik that he would "take the heat for" insurance fraud. (ECF No. 44, ¶ 38); (ECF No. 48, ¶ 38).

During the processing of his appeal of the denial of short-term disability benefits, although he did not initially advise MetLife of the call with Dr. Finley, Haggerty claimed that he and Dr. Finley spoke on August 18, 2016 and that Dr. Finley stated that Haggerty should stop working on that day. (ECF No. 44, ¶¶ 39–40); (ECF No. 48, ¶¶ 39–40). Haggerty and Dr. Finley then collaborated to draft a letter to MetLife stating that Haggerty was unable to work as of August 18, 2016. (ECF No. 44, ¶¶ 41–43); (ECF NO. 48, ¶¶ 41–43). Dr. Finley, however, did not evaluate Haggerty on August 18, 2016, and Haggerty told Dr. Finley to use that date as the date of disability. (ECF No. 44, ¶¶ 44–45); (ECF No. 48, ¶¶ 44–45). After receiving the letter, MetLife agreed to consider Haggerty's claim for short-term disability benefits. (ECF No. 44, ¶ 47); (ECF No. 48, ¶ 47).

Dr. Marcus Goldman ("Dr. Goldman"), an independent physician consultant, was hired to examine Haggerty's conditions, and in doing so, communicated with Dr. Hanzlik. (ECF No. 44, ¶ 50); (ECF No. 48, ¶ 50). Dr. Hanzlik provided the following information to Dr. Goldman: (1) Haggerty was non-compliant; (2) Haggerty self-manipulates his insulin; (3) Haggerty was dishonest; (4) Haggerty requested Dr. Hanzlik to issue a back-dated letter showing an examination on August 18, 2016; (5) Haggerty was not seen by Dr. Hanzlik on August 18, 2016; (6) Dr. Hanzlik told Haggerty his conduct had the appearance of insurance fraud; (7) Haggerty replied that he would take the fall for it; and (8) after refusing to engage in fraud, Haggerty stated to Dr. Hanzlik that she was taking the food out of the mouths of his children. (ECF No. 44, ¶ 50); (ECF No. 48, ¶ 50).

Haggerty again requested Dr. Hanzlik to draft a letter to MetLife. (ECF No. 44, ¶ 52); (ECF No. 48, ¶ 52). After drafting an initial letter, Haggerty advised Dr. Hanzlik that Dr. Finley declared him disabled, to which Dr. Hanzlik modified her letter. (ECF No. 44, ¶ 55); (ECF No. 48, ¶ 55). This letter was then mailed to MetLife in support of Haggerty's appeal. (ECF No. 44, ¶ 56); (ECF No. 48, ¶ 56).

### E. The Communications Regarding Long-Term Disability Benefits and the Denial of the Short-Term Disability Benefits Appeal.

The deadline for Haggerty to file a claim for long-term disability benefits was February 14, 2017. (ECF No. 44, ¶ 81); (ECF No. 48, ¶ 81). On May 19, 2017, Haggerty made a request for documentation concerning an application for long-term disability benefits with his former employer, G4S Investigations. (ECF No. 44, ¶¶ 57–58); (ECF No. 48, ¶¶ 57–58). Ms. Aundria Bond responded to Haggerty's inquiry, and provided the Long-Term Disability Certificate ("the Certificate"), which Haggerty later forwarded to his attorneys. (ECF No. 44, ¶¶ 58–59); (ECF No. 48, ¶¶ 58–59). Shortly after, Haggerty began working on a part-time basis as a SIU Investigator with Merge Investigations. (ECF No. 44, ¶ 60); (ECF No. 48, ¶ 60). Upon receiving Dr. Goldman's report containing his conversations with Dr. Hanzlik, Haggerty contacted Dr. Hanzlik to have her revise her previous notations. (ECF No. 44, ¶ 63); (ECF No. 48, ¶ 63). On that call, Haggerty stated to Dr. Hanzlik that he was currently working two part-time jobs, to which Dr. Hanzlik concluded that he was likely eligible to continue working. (ECF No. 44, ¶ 64); (ECF No. 48, ¶ 64). On September 1, 2017, MetLife denied Haggerty's short-term disability benefit appeal and MetLife did not thereafter receive a response from Haggerty. (ECF No. 44, ¶¶ 66–67); (ECF No. 48, ¶¶ 66–67).

Before February 2018, Haggerty's attorneys advised him that his disability claim was not being handled properly. (ECF No. 44, ¶ 71); (ECF No. 48, ¶ 71). On February 13, 2018, Haggerty

8

emailed Ms. Bond expressing his interest in applying for long-term disability benefits. (ECF No. 44, ¶ 72); (ECF No. 48, ¶ 72). Ms. Bond explained to Haggerty that he was not eligible for long-term disability benefits because his short-term disability benefit request had been denied. (ECF No. 44, ¶ 73); (ECF No. 48, ¶ 73). MetLife also provided Haggerty with the Certificate again in February 2018, however, Haggerty did not read the policy or inform himself of its contents. (ECF No. 44, ¶ 74); (ECF No. 48, ¶ 74).

On August 23, 2019, Haggerty filed suit against MetLife under 29 U.S.C. § 1132(a)(1)(B), requesting that MetLife pay short-term disability benefits and process a decision for long-term disability benefits. (ECF No. 1, ¶¶ 12–16). On October 28, 2019, MetLife filed its Answer (ECF No. 9), asserting that it denied Haggerty's short-term disability benefits claim on December 8, 2016, and that Haggerty failed to submit a claim for long-term disability benefits. (ECF No. 9, ¶¶ 11–12). On February 17, 2020, Haggerty filed an Amended Complaint (ECF No. 20) asserting two causes of action. Count I again requested payment of long-term disability benefits under § 1132(a)(1)(B), but it excluded a claim for short-term disability benefits. (ECF No. 20, ¶¶ 12–15). Count II alleged that MetLife breached its fiduciary duty under 29 U.S.C. § 1132(a)(3) because MetLife "failed to disclose and/or misrepresented to [Haggerty] that he was [in]eligible to apply for [long-term disability] benefits." (ECF No. 20, ¶¶ 16–20).

### III.    STANDARD OF REVIEW

Summary judgment is warranted if the Court is satisfied that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 322 (1986). A fact is material if it must be decided to resolve the substantive claim or defense to which the motion is directed. In other words, there is a genuine dispute of material fact "if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must view the evidence presented in the light most favorable to the nonmoving party. *Id.* at 255. It refrains from making credibility determinations or weighing evidence. *Id.* "Real questions about credibility, gaps in the evidence, and doubts as to the sufficiency of the movant's proof," will defeat a motion for summary judgment. *El v. Se. Pa. Transp. Auth.*, 479 F.3d 232, 238 (3d Cir. 2007).

"When both parties move for summary judgment, '[t]he court must rule on each party's motion on an individual and separate basis, determining for each side whether a judgment may be entered in accordance with the Rule 56 standard.'" *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 402 (3d Cir. 2016) (quoting 10A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2720 (3d ed. 2016)). Under the same rule, if upon review of a party's motion for summary judgment, the court, viewing the evidence in the light most favorable to the non-moving party, enters summary judgment for the moving party, the court may properly declare the opposing party's cross-motion for summary judgment as moot. *Beenick v. LeFebvre*, 684 F. App'x 200, 205–06 (3d Cir. 2017).

IV.   **ANALYSIS**

MetLife asks the Court to enter summary judgment on all counts because Haggerty cannot sufficiently establish his breach of fiduciary duty claim under § 1132(a)(3), and because Haggerty's failure to submit a timely application for long-term disability benefits consistent with the terms of the Plan precludes him from obtaining long-term disability benefits under § 1132(a)(1)(B). (ECF No. 43, pp. 2–3). Haggerty does not specifically respond to these arguments, but argues that because the requested relief is allegedly the same under either cause of action—a remand for MetLife to process an application for long-term disability benefits—he must now in

good faith withdraw his claim under § 1132(a)(3) (ECF No. 49, pp. 1–2), which in Haggerty's opinion, would restrict the Court's review to an administrative record that does not exist. (ECF No. 58, pp. 6–7).

To begin with, while MetLife argued in its briefing, among other things, that withdrawal of the § 1132(a)(3) claim was just a procedural ploy to out-maneuver summary judgment,[6] both parties acknowledged at oral argument that the § 1132(a)(3) claim was withdrawn. (ECF No. 63, pp. 25–26). For that reason, the Court will dismiss the § 1132(a)(3) claim with prejudice. *See Gyda v. Temple Univ.*, 2000 WL 675722, at *4 (E.D. Pa. May 23, 2000) (dismissing claims with prejudice that were withdrawn on a motion for summary judgment). The Court will address only Haggerty's § 1132(a)(1)(B) claim.

The parties acknowledge that there was no formal decision rendered by the plan administrator because an application for long-term disability benefits was not filed. The issue for resolution is not whether a decision of the plan administrator is improper, but rather, consistent with the terms of the plan, whether the plan administrator should have to accept and review an application for long-term disability benefits.

Generally, ERISA "does not contain an administrative exhaustion requirement, but it does require covered benefit plans to provide administrative remedies for persons whose claims for benefits have been denied." *Karpiel v. Ogg, Cordes, Murphy & Ignelzi, LLP*, 297 F. App'x 192,

---

[6] In MetLife's briefing, it argues that the above is a procedural ploy to out-maneuver summary judgment because Haggerty has always limited his claim under § 1132(a)(1)(B) to the payment of benefits, whereas his claim under § 1132(a)(3) requested an order compelling the processing of his long-term disability benefits application, and regardless, Haggerty is procedurally prohibited from withdrawing his § 1132(a)(3) claim at this stage. MetLife specifically argues that Haggerty cannot establish good cause required by Federal Rule of Civil Procedure 16(b)(4) to amend the Court's deadline for amending pleadings, and that Haggerty is prohibited from withdrawing his claim under § 1132(a)(3) by Federal Rule of Civil Procedure 15(a). (ECF No. 58, p. 7).

193 (3d Cir. 2008) (citations omitted). In accordance with that requirement, "courts have long held that an ERISA plan participant must exhaust the administrative remedies available under the plan before seeking relief in federal court unless the participant can demonstrate that resort to the plan remedies would be futile." *Id.* (citation omitted). Administrative exhaustion is typically an affirmative defense employed by defendants where they bear the burden of proving failure to exhaust. *Am. Chiropractic Ass'n v. Am. Specialty Health Inc.*, 625 F. App'x 169, 173 (3d Cir. 2015) (citations omitted).

Administrative exhaustion issues have traditionally arisen where a beneficiary asserts claims "either to enforce the terms of a benefits plan under § 1132(a)(1)(B) or to enforce rights established by ERISA under § 1132(a)(3)." *Premick v. Dick's Sporting Goods, Inc.*, No. 06-530, 2007 WL 141913, at *6 (W.D. Pa. Jan. 18, 2007) (citing *D'Amico v. CBS*, 297 F.3d 287, 290–91 (3d Cir. 2002)). In these situations, courts may require exhaustion "where the statutory claim 'merely recasts [a] benefits claim in statutory terms.'" *Id.* (quoting *Harrow v. Prudential Ins. Co.*, 279 F.3d 244, 252 (3d Cir. 2002)).

Exhaustion, however, is not a hard and fast rule of jurisdiction but is properly cast as a judicial tool, which places no restrictions on the court's power to adjudicate claims. *Metro. Life Ins. Co. v. Price*, 501 F.3d 271, 279 (3d Cir. 2007). To that extent, while exhaustion is typically enforced by courts, there is an exception when "resort to the administrative process would be futile." *Berger v. Edgewater Steel Co.*, 911 F.2d 911, 916 (3d Cir. 1990). As futility is an exception to the exhaustion requirement, the party invoking the exception must provide a clear and positive showing of futility. *Cottillion v. United Refining Co.*, 781 F.3d 47, 54 (3d Cir. 2015) (citation omitted).

> Whether to excuse exhaustion on futility grounds rests upon weighing several factors, including: (1) whether plaintiff diligently pursued administrative relief; (2)

12

whether plaintiff acted reasonably in seeking immediate judicial review under the circumstances; (3) existence of a fixed policy denying benefits; (4) failure of the [defendant] to comply with its own internal administrative procedures; and (5) testimony of plan administrators that any administrative appeal was futile. Of course, all factors may not weigh equally.

*Id.* (quoting *Harrow*, 279 F.3d at 250).

In contrast with the general principles set forth above, this case presents a unique situation in which Haggerty, rather than MetLife, is using administrative exhaustion as an affirmative avenue to secure remand. In other words, Plaintiff is asserting an affirmative defense against himself. This "reversed" use of the exhaustion principle is uncommon, and neither the parties nor the Court's research revealed cases sharing particular similarities to the one at hand. The United States Court of Appeals for the Third Circuit, however, has acknowledged the so-called "reverse exhaustion" principle in the context of fiduciary interpleader actions. *See, e.g., Metropolitan Life Ins. Co.*, 501 F.3d at 280–83.[7] Regardless of whether individual plaintiffs may assert a "reverse exhaustion" theory (indeed it would be the odd case—like this one—of a plaintiff seeking dismissal of his own case at summary judgment), the principles of exhaustion do not support a remand for administrative review.[8]

---

[7] In that case, our Court of Appeals analyzed, among other things, whether there is a "reverse exhaustion" requirement limiting a fiduciary's ability to bring an interpleader action. *Id.* at 278. The Court explained that judicial policy supporting exhaustion "applies with particular force when fiduciaries are exercising discretion granted by plan documents." *Id.* at 281. Such deference "insulates the decision from undue judicial second guessing and increases the likelihood that exhaustion (or reverse exhaustion) will weed out frivolous claims, 'promoting the consistent treatment of claims for benefits,' and encouraging nonadversarial claim settlement." *Id.* at 282. (quoting *Harrow*, 279 F.3d at 249) (internal quotation marks omitted) (alterations in original).

[8] The Court notes that, although MetLife's briefing does not expressly address the futility exception to administrative exhaustion, its briefing does include several relevant arguments related to futility, and more specifically, those arguments apply to the factors examined in a futility analysis.

At the outset, Haggerty's dismissal of his § 1132(a)(3) claim on the eve of summary judgment appears to be exactly what MetLife claims it to be—a procedural maneuver employed to prevent the Court from reviewing a record permeated with the appearance of fraudulent and unethical activities. This point is also bolstered by the nature and styling of Haggerty's claims before withdrawal. The original Complaint (ECF No. 1) only included a single request for the payment of short-term and long-term disability benefits in accordance with the Plan under § 1132(a)(1)(B). (ECF No. 1, ¶¶ 13–16). MetLife's Answer (ECF No. 9), however, pointed out that Haggerty did not submit a claim for long-term disability benefits (ECF No. 9, ¶ 12), which in turn, suggests that he is not entitled to the payment of long-term disability benefits. Haggerty later filed an Amended Complaint (ECF No. 20), which included a new request for the MetLife to process an application for long-term disability benefits (ECF No. 20, p. 4) and alleged two counts: Count I again requested the payment of long-term disability benefits under § 1132(a)(1)(B) (ECF No. 20, ¶¶ 12–15), and Count II alleged a breach of fiduciary duty under § 1132(a)(3), which specified that MetLife misrepresented that Haggerty was ineligible to apply for long-term disability benefits. *See also* (ECF No. 32, pp. 2–3) (alleging that MetLife materially misrepresented to Haggerty that he was ineligible for long-term disability benefits because his short-term disability claim was denied).

Haggerty, however, has withdrawn his breach of fiduciary duty claim under § 1132(a)(3) and now tells the Court that Count I has always been one requesting that MetLife process an application for long-term disability benefits under § 1132(a)(1)(B), and that the Court should ignore the record of his misconduct because an administrative record was never created. The recasting of these claims has led to an unclear theory of the case because, although the case used to consist of two claims—one for the payment of benefits consistent with the Plan and another

surrounding the apparent reason for Haggerty's failure to apply for those benefits—the case now consolidates the two as a unified request for the processing of an application for long-term disability benefits under § 1132(a)(1)(B). More specifically, because Haggerty has withdrawn his claim under § 1132(a)(3), he similarly removes from the Court's review the factual circumstances underlying that claim, which leaves no reason for his failure to apply for long-term disability benefits. *See* (ECF No. 48, ¶ 82) (responding to MetLife's material fact regarding misrepresentative communications between the parties by denying the circumstance as moot on the grounds that he withdrew his breach of fiduciary duty claim).

Moreover, although Haggerty argues that the Court should abstain from reviewing the record because an appeal of a denial of a long-term disability benefits would provide him with a chance to supplement the existing record (ECF No. 63, p. 25), doing so would at the same time require the Court to ignore that Haggerty did not seek to supplement the existing record or, for that matter, rebut or contradict the record of his unethical conduct by interviewing or subpoenaing the attending physicians.

Nevertheless, despite the circumstances above, after careful review of the Plan and its provisions the record establishes the futility of a remand because, for the reasons detailed below, it is clear from the terms and interpretation of the Plan that Haggerty is not entitled to the payment of long-term disability benefits. He never applied for those benefits, and any application in the future would be untimely.

ERISA requires plan administrators to administer and manage plans "in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1)(D). Under § 1132(a)(1)(B), a plan participant may bring an action "to recover benefits due to him under the terms of the plan, to enforce his rights under the terms of the plan, or to clarify his rights to future

benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). "A plaintiff seeking to recover under this section must demonstrate that the benefits are actually due; that is, he or she must have a right to benefits that is legally enforceable against the plan." *Hooven v. Exxon Mobil Corp.*, 465 F.3d 566, 575 (3d Cir. 2006) (alterations in and to original).

The Certificate requires notice of the claim and required Proof to be sent to MetLife within ninety days after the Elimination Period, which equates to about six months after the onset of the disability at issue. (ECF No. 44, ¶ 13); (ECF No. 48, ¶ 13). The Certificate also provides flexibility for those whom it is not reasonably possible to give notice of claim or Proof within ninety days after the Elimination period by allowing them to submit claims so long as the notice of claim and Proof are given as soon as is reasonably possible after the original deadline. (ECF No. 44, ¶ 14); (ECF No. 48, ¶ 14).

The original deadline to file a claim for payment of long-term disability benefits was on February 14, 2017. (ECF No. 44, ¶ 81); (ECF No. 48, ¶ 81). Because no claim was ever submitted, to comply with the Certificate, Haggerty is required to show that it was not reasonably possible to comply with the deadline, and once it became reasonably possible to comply, he subsequently gave notice and Proof as soon as he reasonably could have. As Haggerty has withdrawn his breach of fiduciary duty claim under § 1132(a)(3),[9] and he does not otherwise address his continued failure to submit an application,[10] any application now-made for the payment of long-term disability

---

[9] To be clear, the Court need not analyze Haggerty's breach of fiduciary duty claim under § 1132(a)(1)(B) because our Court of Appeals has "explicitly held that § 502(a)(1)(B) [§ 1132(a)(1)(B)] does not create a private cause of action for breach of fiduciary duty." *Michaels v. Breedlove*, No. 03-4891, 2004 WL 2809996, at *2 (3d Cir. Dec. 8, 2004) (citing *Haberern v. Kaupp Vascular Surgeons Ltd. Defined Benefit Pension Plan*, 24 F.3d 1491, 1501 (3d Cir. 1994)).

[10] Even if the Court were to entertain, despite the withdrawal of the § 1132(a)(3) claim, the alleged misrepresentations made by representatives of MetLife as a reason for the failure to apply for long-term disability benefits, the record quickly reveals that these alleged misrepresentations are broad, unsubstantiated, and inconsistent with evidence submitted.

16

benefits would be untimely[11] according to the express terms of the Certificate. Therefore, the Court holds that an equitable remand for the processing of an application for long-term disability benefits would be futile.

---

"Although [a non-movant] is entitled to the benefit of all reasonable factual inferences at this stage, [he] must nevertheless point to some evidence in the record to support [his] factual assertions." *Gillispie v. RegionalCare Hosp. Partners Inc.*, 892 F.3d 585, 594 (3d Cir. 2018). A mere "scintilla of evidence," without more, will not give rise to a genuine dispute for trial. *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001). "As a general proposition, 'conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment.'" *Gonzalez v. Sec'y of Dept. of Homeland Sec.*, 678 F.3d 254, 263 (3d Cir. 2012) (quoting *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 161 (3d Cir. 2009)). *See also MD Mall Assocs., LLC v. CSX Transp., Inc.*, 715 F.3d 479, 485 n.6 (3d Cir. 2013) ("Summary judgment is proper only where the pleadings, discovery, and non-conclusory affidavits show that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Haggerty testified that he had multiple calls with representatives of MetLife, including customer service representatives, claims specialists, and appeal specialists. (ECF No. 44, ¶ 83); (ECF No. 48, ¶ 83). Haggerty, however, could not identify with whom he spoke, nor could he provide the dates of those conversations. (ECF No. 44, ¶ 83); (ECF No. 48, ¶ 83). Haggerty failed to specify the substance of those conversations. Moreover, although MetLife's representatives are required to document and describe phone and voicemail communications with claimants in an electronic diary known as "Claims Activity History," which includes communications regarding long-term disability benefit applications (ECF No. 44, ¶ 84); (ECF No. 48, ¶ 84), Haggerty has not provided any writings or documentation associated with the communications, and he admits there are no writings associated with the alleged communications. (ECF No. 44, ¶ 83); (ECF No. 48, ¶ 83). Thus, Haggerty's general and broad testimony is no more than a conclusory, self-serving attempt to avoid summary judgment, one which otherwise lacks supporting record evidence.

[11] Haggerty does not address MetLife's untimeliness argument, and even if he had, Haggerty received the Certificate detailing procedures for applying for long-term disability benefits no later than May 19, 2017. (ECF No. 44, ¶ 58); (ECF No. 48, ¶ 58). Haggerty had a duty to inform himself of the terms and specifics of applying for long-term disability benefits. *See Bicknell v. Lockheed Martin Group Benefits Plan*, 410 F. App'x 570, 575 (3d Cir. 2011) (quoting *Jordan v. Fed. Exp. Corp.*, 116 F.3d 1005, 1016 (3d Cir. 1997)) ("ERISA plan 'participants have a duty to inform themselves of the details provided in their plans.'"). If he had informed himself of the terms, he would have understood that he was required to submit a claim as soon as reasonably possible. (ECF No. 44, ¶ 14); (ECF No. 48, ¶ 14). Moreover, on February 13, 2018, Haggerty expressly stated that he would be applying for long-term disability benefits. (ECF No. 44, ¶ 72); (ECF No. 48, ¶ 72). To the Court's knowledge, Haggerty still has not applied for those benefits.

After discovery revealed the fraudulent and inequitable activities commonly engaged in by Haggerty to deceive MetLife into providing short-term disability benefits payments, Haggerty sought to prevent the Court from reviewing the well-developed record. In doing so, Haggerty upended his own case by withdrawing what appeared to be his only reason for failing to timely file an application for long-term disability benefits. As the terms of the Certificate clearly provide that any application must be timely, the Court need not remand for the consideration of an untimely submission, for which MetLife would merely rubber-stamp a denial of long-term disability benefits.

## V.  CONCLUSION

For the reasons set forth above, the Court grants MetLife's Motion for Summary Judgment (ECF No. 33). The circumstances of this case conflict with the principles of administrative exhaustion because an equitable remand for MetLife to process an application for long-term disability benefits would be futile seeing that Haggerty has failed to apply for long-term disability payments, and any application for the payment of long-term benefits now-made would be untimely according to the terms of the Plan. The Court denies Haggerty's Motion for Summary Judgment (ECF No. 31) as moot. An Order of Court will follow.

BY THE COURT:

_____
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE